WRIGHT, J.,
delivered the -opinion of the Court.
This is a bill for a construction of the will of Jubilee Rogers.
In the second clause, he bequeathed to his wife, Harriet, during her -life, or widowhood, seven slaves, by name, and at her death, or marriage, to be disposed of as he should afterwards direct in said will, unless *662 she died his widow; in which event he gave her the privilege of giving said negroes to whom she pleased,, among his children or grandchildren.
The fourth clause of the will is a general residuary one, to his four sons, John A., Peleg M., Benjamin M., and Jubilee W., or their legal representatives.
In the fifth clause he directs, that in case of the marriage of his wife, Harriet, the said slaves shall he equally divided among his children, if living; and if any of them he dead, leaving issue, that issue to re-’ ceive the share of its parent.
The testator died in June, 1855, and the said Harriet died the 15th of February, 1858, without disposing of said slaves, under the power given her in the sec»-ond clause of the will, and without having again married.
The question to he decided is, what becomes of these slaves ? Ho they go to the testator’s children and grand-children under the second clause,- or to his four sons under the residuary clause, or to his children under the fifth clause, which only directs to whom they shall go in case of the second marriage of said Harriet; or did-the testator die intestate as to them?
The Chancellor held, that, as to these slaves, the testator died intestate.
In this we think he erred. From an examination of this will, we cannot believe the testator intended to .die intestate as to any of his property; and the legal presumption is, that he did not so intend. Such is the rule in all cases where a man engages in an act so important as the execution of his will. Williams v. Williams, 10 Yer., 25. Nor do we think they pass *663 under the residuary clause to the testator’s four sons, it being apparent, from the context, that they were not intended so to pass. And it is clear they do not go to his children under the fifth clause, for that could only be in the event his widow married again, and she never did marry.
We have had much difficulty in arriving at what we supposed to have been the meaning of the testator in this will. At one time we were inclined to concur with the Chancellor’s decree. But a more careful examination of the will and the authorities, lead us to the conclusion, that under the second clause of the will, these slaves, upon the death of the testator’s widow, went per capita to his children and grandchildren then living.
It is a well established principle, that where a trust is created for a certain class of objects, and the discretionary power applies only to the selection from, or distribution amongst those objects, the Court, while it disclaims the exercise of the discretion reposed in the trustees, will, if necessary, enforce the performance of the trust by decreeing a distribution of the property amongst all the objects equally. Hill on Trustees, 486; Brown v. Higgs, 4 Ves., 708; 5 Ves., 495; 8 Ves., 561; 18 Ves., 192.
The difficulty here is, to determine whether Harriet, the widow of the testator, had a power, simply, as such, or a power in the nature of a trust; or if it be not a power in the nature of a trust, whether it is not to be considered as a power with a bequest over to the objects of it in default of any appointment by her. In many instances it is difficult to distinguish the cases upon these questions. Sugden on Powers, 394-397.
If the testator intended it to be a condition pre *664 cedent to- the gift of these slaves to his children and grandchildren, that his widow should exercise’ her power in their favor, then no interest could vest in them until the power was duly exercised; and she having died without executing it, the gift cannot be enforced. Hill on Trustees, 490. And so if it were simply a power. Hill on Trustees, 67; Brown v. Higgs, 8 Ves., 570. But if it be a power in the' nature of a trust, which it was her duty to execute, or a power with a bequest over to the objects of it in default of any appointment by her, and of her failure to marry again, then, though she might, by the exercise of the power, at her death, have given these slaves to whom she pleased, among the testator’s children or grandchildren— being confined to that class — yet having omitted to exercise it, the entire class will take. Hill on Trustees, 67-70; 5 Ves., 595; 8 Ves., 561; Jarnagin v. Conway, 2 Hum., 50.
In some of the cases decided on this subject, there appears to be a material distinction between those cases where the absolute interest is given' to the donee of the power, and where, consequently, the exercise of the power can take effect only out of that interest, and where the person by whom the power is to be exercised, takes only a previous 'estate for life, to which the power is only collateral.
In the former case, the donee of the power himself would be entitled beneficially, upon his refusal or omission to exercise it; and the intention or wish of the testator to qualify the gift to him would thus be disappointed. Consequently, in such cases, the Court has always endeavored to give effect to the apparent inten *665 tions of the testator, by treating the donee as a trustee for the objects of the power.
But where the execution of the power is not to take effect out of the interest of the person by whom it is to be exercised; as where it is given ' to a tenant for life", to be exercised after the detrmination of his life estate, or a fortiori, where the party to whom it is given takes no beneficial interest, the same argument on behalf of the . objects of the power does not hold good, and the decisions in favor of their taking, in default of the exefcisé of the power, are said not to be so uniform. And it is said that indeed where they have been held entitled, in default of appointment, the decision has proceeded, not on the ground that the power was in the nature of a trust .in their favor, but that the bequest operated as a direct gift to the objects, in default of the exercise of the power. Hill on Trustees, 67, 68.
But the above distinction between an absolute' or less interest in the donee of the power, seems now not to be attended to; and at the present day, the Courts will endeavor, if possible, to .construe a bequest of this description into a gift, by implication to the objects of the power, in default of its being- exercised. Hill on Trustees, 69; Sugden on Powers, 397, 398; Walsh v. Wallinger, 2 Rus. & Mylne, 78; Kennedy v. Kingston, 2 Jac. & Walker, 431; Brown v. Pocock, 6 Sim., 257; Croft v. Adam, 12 Sim., 639; Burrough v. Philcox, 5 Myl. & Or., 72; Notes to Harding v. Glyn, in White and Tudor’s Equity Cases, reported in 72 Law Library, 344-352, top pages.
In Brown v. Higgs, the words “ authorize and empower ” were held to create an imperative trust, or gift, *666 in favor of the objects of the power in default of its exercise. So in Burrough v. Philcox, the words “shall have pow'er to dispose of by will” had this effect. Notes to Harding v. Glyn, 72, Law Library, 333—344. And so, also, in Brown v. Pocock, 6 Sim., 267, a bequest to one for life, with the poiver of leaving a moiety of the same property to and for the benefit of his wife and children, in such manner as he should, by will, duly executed, give and bequeath the same; in default of appointment, was held a gift to the wife and children by implication. The Vice-Chancellor said: “ The codicil contains no express gift over in default of appointment ; but it is clear that the testatrix intended the wife and children to take the fund, and, therefore, I am of opinion, that there is a gift to them, by implication, subject to the power.” And in Kennedy v. Kingston, 2 Jac. & Walker, 431, upon a bequest to “Ann Rawlings, for her life, of £500, and, at her decease, to divide it in portions, as she shall choose, to her children,” the Master of the Rolls held, that a power to appoint the proportions in which definite objects are to take, tacitly includes a gift to them, in default of appointment. And in Burrough v. Philcox, the same rule applies where there is a power of selection from a class, or from one class of persons, or another in the alternative. Hill on Trustees, 70; Jones v. Torin, 6 Sim., 255; Longmore v. Broom, 7 Ves., 125.
With these authorities, how are we to construe the present. will ? Here is no express gift over in default of appointment; but only upon her second marriage, which never having taken place, neither the fourth or fifth clause touched these slaves; for, if she died his widow, *667 they were disposed of in the second clause, or not at all. Now, can there be a doubt, if we look to the entire will, that the testator intended, in the events that have happened, to dispose of them: and that, upon the death of his wife, his children and grandchildren, should take them? We think not. And that it must be held a gift to them by implication, subject to the power which the testator, for wise and obvious reasons, intended she, at her death, might exercise among his children or grandchildren.
Here the subject of the power and of the gift — the seven slaves — admits of no uncertainty. And so, as to the objects or persons to be benefited, to wit: children or grandchildren of the testator. Not Ms children and grandchildren at Ms death, but at Ms wife’s death; for the rule is, that when, as in this case, the donee of the power has a life interest in the subject of the power which is to be exercised by will, or at her death, or at or before her death, the objects will be considered to be those who answer the particular description, at the death of the donee, and there will be no uncertainty. Notes to Harding v. Glyn, White and Tudor’s Eq. Cases, 72, Law Lib., 338-346; 2 Jac. & Walker, 431; 2 Rus. & Mylne, 78; 6 Sim., 257.
But who are the objects of the power and of the testator’s bounty here? What is the meaning of children or grandchildren, as used in the second clause of this will ? Are the grandchildren to take with their parents; or are the grandchildren mentioned merely as substitutes for children, and to take only in the event of the parents being dead ? The latter is, we think, the rule by which this will should be construed. This is, *668 we think, the intention upon the. whole will, and upon the authority of Jones v. Torin, 6 Sim., 255, and Garthwaite v. Robinson, 2 Sim., 43, though it may seem to he against Longmore v. Broom, 7 Ves., 125. We take it, as well upon this, as upon the other clauses of this will, that the testator did not intend the parents and the children to take at the same time; hut only that grandchildren were to take, if the parent is not living. 2 Sim., 43.
Then how do they take ? And are the children and grandchildren (those who take) to take per stirpes or per capita ? It seems, upon authority, they take per ••capita — though I am not sure this was the testator’s meaning. But I have been unable to find that, in this' will, he has sufficiently expressed a different intention, to authorize a departure from the rule. Notes to Harding v. Glyn, 72 Law Lib.. 346, 347; 7 Ves., 125; Davenport v. Hanbery, 3 Ves. Jr., 257; 3 Hawk’s R., 604; 2 Dev. Eq. R., 509; Seay, adm’r, v. Winston et al., 7 Hum., 472.
Reverse the decree, and decree for the children and grandchildren, upon the principles of this opinion.